UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ANTHONY CARTY,

                              Plaintiff,

          -against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, P.O. RONALD CAPURSI (Shield
Number 7276), P.O. PATRICK F. O'NEILL, (Shield
Number 5581), P.O. SEAN DAWSON (Shield Number
1415), and P.O. JANINE SARTINI (Shield Number
20542),

                              Defendants.

**AMENDED
COMPLAINT**

**JURY TRIAL
DEMANDED**

---

Plaintiff, ANTHONY CARTY, by his attorney, ROBERT J. DI GIANNI, JR., as and for his

complaining of the defendants, hereby alleges the following:

## PRELIMINARY STATEMENT

1.      Plaintiff ANTHONY CARTY brings this action for compensatory damages, punitive

damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violation of his

civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York

and the United States.

## JURISDICTION

2.      The action is brought pursuant to 42 U.S.C. § 1983, § 1985 and § 1988, and the

Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon

this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4) and the aforementioned statutory and

constitutional provisions.

3.     Plaintiff ANTHONY CARTY further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

### VENUE

4.     Venue is proper for the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), (c) and § 1402(b) because the claims arose in this district and Plaintiff ANTHONY CARTY resides in this district.

### JURY DEMAND

5.     Plaintiff ANTHONY CARTY respectfully demands a trial by jury of all issues in this matter pursuant to Fed.R.Civ.P. 38 (b).

### THE PARTIES

6.     Plaintiff, ANTHONY CARTY ("Mr. Carty"), is and was at all relevant times hereto a citizen of the United States and a resident of the County of Richmond and State of New York.

7.     Defendant, City of New York ("City"), is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and on information and belief, The City receives federal funding and is a "public entity" as defined by 42 U.S.C. § 12131.

8.     The City is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

9.     Defendant, New York City Police Department ("NYPD"), is a charter agency of The City authorized to perform law enforcement functions in and for The City. Defendant The City

maintains the NYPD, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

10.     Defendant, P.O. RONALD CAPURSI (Shield Number 7276) ("P.O. Capursi") of the 120th Precinct Command, is and was at all times relevant hereto an employee of The City, duly appointed and acting as a police officer in NYPD and was an agent, servant, and/or employee of The City, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer and was acting under the supervision of said department and according to their official duties.

11.     Defendant P.O. Capursi refers to known and unknown named police officers and/or agents who were at all relevant times herein employees of defendant NYPD and were acting under the supervision of said department and according to their official duties.

12.     Defendant, P.O. PATRICK F. O'NEILL (Shield Number 5581) ("P.O. O'Neill") of the Force Investigation Command, is and was at all times relevant hereto an employee of The City, duly appointed and acting as a police officer in NYPD and was an agent, servant, and/or employee of The City, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer and was acting under the supervision of said department and according to their official duties.

13.     Defendant P.O. O'Neill refers to known and unknown named police officers and/or agents who were at all relevant times herein employees of defendant NYPD and were acting under the supervision of said department and according to their official duties.

14.   Defendant, P.O. SEAN DAWSON (Shield Number 1415) ("P.O. Dawson") of the 120th Precinct Command, is and was at all times relevant hereto an employee of The City, duly appointed and acting as a police officer in NYPD and was an agent, servant, and/or employee of The City, acting in the course and scope of her employment as such and in furtherance of the interests and business of said employer and was acting under the supervision of said department and according to their official duties.

15.   Defendant P.O. Dawson refers to known and unknown named police officers and/or agents who were at all relevant times herein employees of defendant NYPD and were acting under the supervision of said department and according to their official duties.

16.   Defendant, P.O. JANINE SARTINI (Shield Number 20542) ("P.O. Sartini"), of the 120th Precinct Command, is and was at all times relevant hereto an employee of The City, duly appointed and acting as a police officer in NYPD and was an agent, servant, and/or employee of The City, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer and was acting under the supervision of said department and according to their official duties.

17.   Defendant P.O. Sartini refers to known and unknown named police officers who were at all relevant times herein employees of defendant NYPD and were acting under the supervision of said department and according to their official duties.

18.   That at all times relevant herein, P.O. Capursi was a supervisory employee of, and an agent, servant and/or employee of The City, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer, and otherwise performed and engaged in conduct incidental to the performance of his functions in the course of his duties. He is sued individually and in his supervisory capacity.

19. That at all times relevant herein, P.O. O'Neill was a supervisory employee of, and an agent, servant and/or employee of The City, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer, and otherwise performed and engaged in conduct incidental to the performance of his functions in the course of his duties. He is sued individually and in his supervisory capacity.

20. That at all times relevant herein, P.O. Dawson was a supervisory employee of, and an agent, servant and/or employee of The City, acting in the course and scope of her employment as such and in furtherance of the interests and business of said employer, and otherwise performed and engaged in conduct incidental to the performance of her functions in the course of her duties. She is sued individually and in her supervisory capacity.

21. That at all times relevant herein, P.O. Sartini was a supervisory employee of, and an agent, servant and/or employee of The City, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer, and otherwise performed and engaged in conduct incidental to the performance of his functions in the course of his duties. He is sued individually and in his supervisory capacity.

22. That at all times mentioned herein, each individual defendant was acting under color of state law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of The City and the State of New York.

23. The individual-defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of Mr. Carty's rights.

24. That at all times relevant herein, The City operated, maintained, managed, supervised and controlled NYPD as part of and in conjunction with its municipal functions.

25.     That at all times relevant herein, P.O. Capursi was an employee of The City and NYPD.

26.     That at all times relevant herein, P.O. O'Neill was an employee of The City and NYPD.

27.     That at all times relevant herein, P.O. Dawson was an employee of The City and NYPD.

28.     That at all times relevant herein, P.O. Sartini was an employee of The City and NYPD.

29.     That at all times relevant herein, P.O. Capursi was personnel of The City and NYPD.

30.     That at all times relevant herein, P.O. O'Neill was personnel of The City and NYPD.

31.     That at all times relevant herein, P.O. Dawson was personnel of The City and NYPD.

32.     That at all times relevant herein, P.O. Sartini was personnel of The City and NYPD

33.     That at all times hereinafter mentioned and upon information and belief, The City employed and supervised P.O. Capursi.

34.     That at all times hereinafter mentioned and upon information and belief, The City employed and supervised P.O. O'Neill.

35.     That at all times hereinafter mentioned and upon information and belief, The City employed and supervised P.O. Dawson.

36.     That at all times hereinafter mentioned and upon information and belief, The City employed and supervised P.O. Sartini.

37.     That at all relevant times herein, The City and NYPD are responsible for their police officers, agents and/or representatives under the theory of *respondeat superior*.

38.    That at all times relevant herein, P.O. Capursi was an employee of The City and NYPD and that The City and NYPD are responsible for the actions and conduct of him under the theory of *respondeat superior*.

39.    That at all times relevant herein, P.O. O'Neill was an employee of The City and NYPD and that The City and NYPD are responsible for the actions and conduct of him under the theory of *respondeat superior*.

40.    That at all times relevant herein, P.O. Dawson was an employee of The City and NYPD and that The City and NYPD are responsible for the actions and conduct of her under the theory of *respondeat superior*.

41.    That at all times relevant herein, P.O. Sartini was an employee of The City and NYPD and that The City and NYPD are responsible for the actions and conduct of him under the theory of *respondeat superior*.

42.    Upon information and belief, the defendant police officers were graduates of the Police Academy of The City of New York, where they received training and instruction set forth and sanctioned by The City and NYPD.  Further, while at The Police Academy and intermittently thereafter, Police Officers including the named defendants receive training and instruction formulated by The City and NYPD.

43.    At all times relevant herein, The City had the duty to competently and sufficiently train, within the Police Academy and at the Command, Precinct and Patrol levels, the defendant officers, P.O. Capursi, P.O. O'Neill, P.O. Dawson, and P.O. Sartini, to conform their conduct to a standard for the protection of individuals, such as plaintiff, against the unreasonable risk of harm by conducting themselves in such a manner so as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as plaintiff herein.

44. At all times relevant herein, The City had the duty to competently and sufficiently train within the Police Academy and at the Command, Precinct and Patrol levels the defendant officers, P.O. Capursi, P.O. O'Neill, P.O. Dawson, and P.O. Sartini, in the protections of the rights of plaintiff under the Constitution and the Bill of Rights.

45. At all times hereinafter mentioned, upon information and belief, P.O. Capursi was acting in his capacity as employee, agent or servant of The City and was also present at the same time and in the same place as plaintiff as aforesaid.

46. At all times hereinafter mentioned, upon information and belief, P.O. O'Neill was acting in his capacity as employee, agent or servant of The City and was also present at the same time and in the same place as plaintiff as aforesaid.

47. At all times hereinafter mentioned, upon information and belief, P.O. Dawson was acting in his capacity as employee, agent or servant of The City and was also present at the same time and in the same place as plaintiff as aforesaid.

48. At all times hereinafter mentioned, upon information and belief, P.O. Sartini was acting in his capacity as employee, agent or servant of The City and was also present at the same time and in the same place as plaintiff as aforesaid.

49. At all times hereinafter mentioned, P.O. Capursi was acting under color of law.

50. At all times hereinafter mentioned, P.O. O'Neill was acting under color of law.

51. At all times hereinafter mentioned, P.O. Dawson was acting under color of law

52. At all times hereinafter mentioned, P.O. Sartini was acting under color of law.

53. At all times hereinafter mentioned, the individual defendants' acts constituted state action.

54.     That on or about May 30, 2014, P.O. Capursi, P.O. O'Neill, P.O. Dawson, and P.O. Sartini were on duty and/or acting as employees, agents or servants of The City and/or NYPD and were also present at the same time and in the same place as plaintiff as aforesaid.

## STATEMENT OF FACTS

55.     That on or about May 30, 2014, at all times as stated herein, Mr. Carty was a lawful citizen abiding by all laws, statutes and ordinances of the State of New York and the United States of America.

56.     That on or about May 30, 2014, Mr. Carty was lawfully within the confines of his residence, located at 815 Post Avenue, Apartment 1A, Staten Island, in the County of Richmond and State of New York ("residence").

57.     That on or about May 30, 2014, Mr. Carty was lawfully and legally within the confines of his residence when he was unlawfully arrested by known and unknown officers, agents and employees of The City and NYPD ("officers").

58.     That on or about May 30, 2014, defendants' officers entered Mr. Carty's residence.

59.     That on or about May 30, 2014, defendants' officers handcuffed Mr. Carty behind his back.

60.     That on or about May 30, 2014, defendants' officers handcuffed Mr. Carty excessively tightly, causing plaintiff to suffer lacerations to his hands and loss of feeling in his arm.

61.     That on or about May 30, 2014, P.O. Dawson grabbed Mr. Carty by his rear handcuffs and led him down the steps of his residence.

62.     That on or about May 30, 2014, P.O. O'Neill was walking in front of Mr. Carty.

63.     That on or about May 30, 2014, P.O. Capursi was walking in front of Mr. Carty.

64.  That when P.O. Dawson pushed Mr. Carty into P.O. O'Neill, she caused Mr. Carty's head to contact with P.O. O'Neill.

65.  That on or about May 30, 2014, P.O. Capursi grabbed Mr. Carty's tie and forcefully punched him in the face, specifically on his left eye and eyebrow area, while plaintiff's hands were handcuffed behind his back.

66.  That as Mr. Capursi collapsed from the punch, defendants' officers continued to punch Mr. Carty, while plaintiff's hands remained handcuffed behind his back.

67.  That on or about May 30, 2014, P.O. Capursi punched Mr. Carty's face with such excessive force that he broke his hand.

68.  That on or about May 30, 2014, Mr. Carty was knocked unconscious by defendants' officers.

69.  That on or about May 30, 2014, while Mr. Carty was unconscious, defendants' officers placed plaintiff in ankle shackles.

70.  That on or about May 30, 2014, defendants' officers dragged Mr. Carty, face down, on the stairs and ground outside of the residence.

71.  That on or about May 30, 2014, defendants' officers slammed Mr. Carty's face, head and chest onto the concrete steps outside of his residence.

72.  That on or about May 30, 2014, one of defendants' officers placed his knees on plaintiff's back, forcibly compressing plaintiff's chest into the steps' edges and causing him to suffocate.

73.  That as a result, plaintiff complained that he was having trouble breathing.

74.  That in response to plaintiff's complaint that he could not breathe, defendants' officer placed more pressure on plaintiff's chest, further suffocating him.

75.    That on or about May 30, 2014, defendants' officers took turns stepping on the ankle shackles attached to plaintiff's ankles, causing him to suffer extreme pain and suffering to both ankles.

76.    That on or about May 30, 2014, defendants' officers beat, battered, and assaulted Mr. Carty about his head, neck, back and limbs using excessive force, causing him to sustain, including but not limited to, a fractured eye socket, concussion, and multiple facial lacerations and abrasions resulting in permanent scars.

77.    That on or about May 30, 2014, defendants' officers repeatedly assaulted plaintiff after handcuffs were applied and plaintiff was restrained.

78.    That at all times relevant herein, defendants' officers, their agents, servants, and/or employees unlawfully struck Mr. Carty with closed fists, feet and foreign objects.

79.    That on or about May 30, 2014, Mr. Carty did not resist or obstruct his arrest in any way.

80.    That at all times relevant herein, defendants' officers used excessive force and physical force upon Mr. Carty causing him to sustain severe and permanent injuries, despite the fact that plaintiff did not pose a threat to the physical safety of any of defendants' officers, or to the public at large, or to any third party.

81.    Furthermore, the defendants used excessive force against the plaintiff despite the plaintiff's submissive and non-threatening conduct, which was duly deferential and respectful of the defendants' apparent authority as law enforcement officers and/or state actors engaged in a law enforcement capacity.

82.   That at all times relevant herein, during the unlawful assault and battery of Mr. Carty, the individual defendants used excessive, unnecessary and unwarranted force upon Mr. Carty, without his consent and without justification or legal basis.

83.   That at all times relevant herein, Mr. Carty suffered extreme, disabling and protracted pain to his head, neck, back and limbs as a result of the excessive force.

84.   That on or about May 30, 2014, defendants' officers threw Mr. Carty into a black body bag and zippered the bag over the entirety of the plaintiff's body, including his head.

85.   That on or about May 30, 2014, defendants' officers put Mr. Carty into an ambulance and transported him to Richmond University Hospital.

86.   That at all times relevant herein, defendants, their agents, servants and/or employees, while acting in concert, maliciously and with the intent to injure Mr. Carty, and without just cause or any right to do so, exerted excessive force upon Mr. Carty, while he was restrained.

87.   That at all times relevant herein, defendants, their agents, servants and/or employees acted maliciously and intentionally.

88.   That at all times relevant herein, the excessive force used upon Mr. Carty was unlawful, unwarranted and unjustified.

89.   That at all times relevant herein, defendants, their agents, servants and/or employees knew or should have known that such excessive force was unwarranted.

90.   That at all times herein, defendants, their agents, servants and/or employees were all acting in the performance of their employment, within the scope of their authority and in furtherance of policies and practices implemented by The City and NYPD.

91.   Mr. Carty has suffered and continues to suffer damage as a result of the events described herein.

92.     That upon information and belief, the aforesaid assault, battery and abuse of authority was not the first incident wherein P.O. Capursi, P.O. O'Neill, P.O. Dawson, and/or P.O. Sartini committed acts of misconduct while on duty as employees of the City and/or NYPD.

93.     The City and NYPD had actual and constructive notice of P.O. Capursi, P.O. O'Neill, P.O. Dawson, and P.O. Sartini's propensities for violence and misconduct but failed to do anything to mitigate the danger that their continued employment presented to the public at large, including the plaintiff herein.

94.     That at all times relevant herein, the City and/or NYPD did fail to train and/or retrain and/or reinstruct P.O. Capursi, P.O. O'Neill, P.O. Dawson and P.O. Sartini after acquiring notice of their defective and dangerous propensities.

95.     That at all times relevant herein, The City and/or NYPD did negligently hire, retain and train P.O. Capursi, P.O. O'Neill, P.O. Dawson and P.O. Sartini to the detriment of the public and to the plaintiff herein.

96.     By reason of the foregoing acts of the defendants, and as a direct and proximate result of the acts of the defendants, Mr. Carty suffered severe and permanent personal injuries and damages, and upon information and belief, will continue to suffer pain in the future.

97.     By reason of the foregoing acts of the defendants, Mr. Carty was caused severe and intense emotional and psychological anguish, distress and embarrassment and will continue to suffer same in the future.

98.     By reason of the foregoing, Mr. Carty was compelled to and did necessarily require medical attention and did necessarily pay and become liable therefore, and will necessarily continue to incur similar expenses in the future.

99.   By reason of the foregoing acts of the defendants, Mr. Carty was caused emotional and psychological trauma from not only the traumatic experience of the excessive force, but also fearing that he may again be attacked by defendants' officers.

100.   By reason of the foregoing, Mr. Carty was compelled to, and did necessarily incur legal fees and did necessarily pay and become liable therefore, and will necessarily incur similar legal fees in the future.

## PROCEDURAL PREREQUISITES

101.   Plaintiff has timely filed a proper Notice of Claim against the defendants pursuant to General Municipal Law §50e.

102.   The aforesaid Notice of Claim was duly served upon The City and NYPD within ninety (90) days after the causes of action of plaintiff accrued.

103.   That more than thirty (30) days have elapsed since the presentation by plaintiff of said Notice of Claim and his claims remain unadjusted.

104.   That said Notice of Claim was served upon The City within ninety (90) days from the happening of the negligence of The City as hereinafter described and sued upon.

105.   That said Notice of Claim was served upon NYPD within ninety (90) days from the happening of the negligence of NYPD as hereinafter described and sued upon.

106.   That on July 20, 2015, defendants conducted an examination of plaintiff pursuant to GML §50-h.

107.   The defendants and the comptroller have failed, neglected, and refused to pay, settle, compromise, or adjust the claim of the plaintiff herein.

108.   That the within action is being commenced within one (1) year and ninety (90) days after the cause of action of plaintiff accrued.

109.     Plaintiff has duly complied with all the conditions precedent to the commencement of

this action.

## FIRST CAUSE OF ACTION
### DEPRIVATION OF RIGHTS
UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983
(Against Individual-Defendants)

110.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs

as if fully set forth herein.

111.     The individual defendants, under color of state law, subjected Mr. Carty to the

foregoing acts and omissions, thereby depriving plaintiff of his rights, privileges and immunities

secured by the Fourth and Fourteenth Amendments to the United States Constitution, including,

without limitation, deprivation of the following constitutional rights: (a) freedom from

unreasonable seizure of his person, including the excessive use of force; and (b) freedom from

deprivation of liberty without due process of law.

112.     The officer-defendants' deprivation of plaintiff's constitutional rights resulted in

the injuries and damages set forth above.

## SECOND CAUSE OF ACTION
### SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS
UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983
(Against All Defendants)

113.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs

as if fully set forth herein.

114.     By failing to remedy the wrongs committed by his subordinates, in failing to

properly train, screen, supervise, or discipline his subordinates, and by personally participating in

the constitutional injuries set forth above, the individual defendants, in their individual and official

capacities, caused damage and injury in violation of plaintiff's rights guaranteed under the United States Constitution, including its Fourth and Fourteenth Amendments, through 42 U.S.C. § 1983.

115.    As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

### THIRD CAUSE OF ACTION
FAILURE TO INTTERVENE – FOURTH AMENDMENT – 42 U.S.C. § 1983
(Against Individual Defendants)

116.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

117.    Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the Police Department or other municipal agency employing unjustified and excessive force against a civilian.

118.    The individual defendants' use of force against plaintiff was obviously excessive and unjustified under the circumstances yet the individual defendants failed to take any action or make any effort to intervene, halt or protect the plaintiff from being subjected to excessive force by other individual defendants.

119.    The individual defendants' violations of plaintiff's constitutional rights by failing to intervene in other defendants' clearly unconstitutional use of force against plaintiff resulted in the injuries and damages set forth above.

**FOURTH CAUSE OF ACTION**
*MONELL* CLAIM -42 U.S.C. § 1983
(Against Defendants City, NYPD)

120.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

121.    At all times material to this complaint, The City and NYPD had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein, to wit, use of unreasonable force.

122.    All of the acts and omissions by the defendants described above were carried out pursuant to overlapping policies and practices of defendant City which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant City and its agencies, and the NYPD.

123.    Defendants The City and NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

124.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as municipal officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and/or NYPD, all under the supervision of ranking officers of the NYPD.

125.    The aforementioned customs, practices, procedures and rules of the City and the NYPD include, but are not limited to, the following unconstitutional practices:

    a. Using excessive force on individuals;

    b. Failing to supervise, train, screen, instruct and discipline officers and encouraging their misconduct, including but not limited to the individual defendants

named herein;

c. Discouraging officers from reporting the corrupt or unlawful acts of other officers;

d. Retaliating against officers who report police misconduct; and

e. Failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented by a supervisor or other agent or employee of the NYPD and/or The City.

126. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following civil rights actions filed against the City and analogous prosecutions of police officers:

a. Carmody v. City of New York, 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207 (S.D.N.Y.) (police officer alleges that he was terminated for cooperating with another officer's claims of a hostile work environment);

b. Powers v. City of New York, 04-CV-2246 (NGG), 2007 U.S. Dist. LEXIS 27704 (E.D.N.Y.) (police officer alleges unlawful retaliation by other police officers after testifying about corruption within the NYPD);

c. Nonnemann v. City of New York, 02-CV-10131 (JSR) (AJP), 2004 U.S. Dist. LEXIS 8966 (S.D.N.Y.) (former NYPD lieutenant alleging retaliatory demotion and early retirement after reporting a fellow officer to IAB and CCRB for the officer's suspicionless, racially-motivated stop-and-frisk of a group of Hispanic youth);

d. Barry v. New York City Police Department, 01-CV-10627 *2 (CBM), 2004 U.S. LEXIS 5951 (S.D.N.Y.) (triable issue of fact where NYPD sergeant alleged retaliatory demotion and disciplinary charges in response to sergeant's allegations of corruption within her unit and alleged that the NYPD had an "unwritten but pervasive custom of punishing officers who speak out about police misconduct and encouraging, if not facilitating, silence among officers");

e. Walton v. Safir, 99-CV-4430 (AKH), 122 F.Supp.2d 466 (S.D.N.Y. 2000) (factual findings after trial that a 12-year veteran of NYPD was terminated in retaliation for criticizing the racially-motivated policies of the NYPD's Street Crime Unit and for alleging that such policies led to the NYPD shooting death of Amadou Diallo);

f. White-Ruiz v. City of New York, 93-CV-7233 (DLC) (MHD), 983 F.Supp. 365, 380 (S.D.N.Y. 1997) (holding that the NYPD had an "unwritten policy or

practice of encouraging or at least tolerating a pattern of harassment directed at officers who exposed instances of police corruption"); and,

g. <u>Ariza v. City of New York</u>, 93-CV-5287 (CPS), 1996 U.S. Dist. LEXIS 20250 at*1 4 (E.D.N.Y.) (police officer alleges retaliatory duty assignments and harassment in response to his allegations about a racially-discriminatory workplace; on motion for summary judgment, the Court held that the police officer had established proof of both a widespread usage of a policy to retaliate against police officers who expose police misconduct and a failure to train in the police department).

127.    Furthermore, the existence of the aforesaid unconstitutional customs and practices,

**specifically with regard to the failure to supervise, train, instruct and discipline officers**

**and encouraging their misconduct,** is further evidenced, *inter alia,* by the following:

a. In the matter of <u>Raymond Dyer v. New York City Police Department, et ano.</u>, Bronx Supreme Index No.: 301394/13, at an Examination Before Trial on May 23, 2014, defendant police officer Waqar Ali, Shield Number 20144 testified in sum and substance that the extent of education and training pertaining to the laws that police officers are charged to enforce consists of a one (1) day class, which focuses primarily on how to use the penal code index to look up the penal law to justify an arrest that has already been effectuated. *Ali deposition transcript at P. 10.* Ninety-five (95%) of the testing by the Police Academy is multiple choice and limited to the New York City Police Department Patrol Guide, not penal law. <u>Id</u> at p. 11. Although field testing is performed, none of it is utilized to test a cadet's knowledge of the law. <u>Id</u> at p. 12. Zero follow up training is provided with regard to continuing education of penal law. <u>Id</u> at p. 13. Officers learn the law "on the job" and have available to them at the stationhouse a copy of the penal code to reference "if any situation arises". <u>Id</u> at p. 13.

b. The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen Commission Report"), dated July 7, 1994, states:

> In the face of this problem [of corruption], the [NYPD] allowed its systems for fighting corruption virtually to collapse. It has become more concerned about the bad publicity that corruption disclosures generate that the devastating consequences of corruption itself. As a result, its corruption control minimized, ignored and at times concealed corruption rather than root it out. Such an institutional reluctance to uncover corruption is not surprising. No institution wants its reputations tainted – especially a Department that needs the public's confidence and partnership to be effective. A weak and poorly resources anti-corruption apparatus minimizes the likelihood of such taint, embarrassment and potential harm to careers. Thus there is a strong institutional incentive to allow corruption efforts to fray and

lose priority – which is exactly what the Commission uncovered. This reluctance manifested itself in every component of the Department's corruption controls from command accountability and supervision, to investigations, police culture, training and recruitment. For at least the past decade, the system designed to protect the Department from corruption minimized the likelihood of uncovering it.1

c. Accordingly, in 1990, the Office of the Special Prosecutor, which investigated charges of police corruption, was abolished.

d. In response to the Honorable Judge Weinstein's ruling of November 25, 2009 in Colon v. City of New York, 09-CV-00008 (E.D.N.Y.), in which he noted a "widespread... custom or policy by the city approving illegal conduct" such as lying under oath and false swearing, Police Commissioner acknowledged, "When it happens, it's not for personal gain. It's more for convenience.2

e. Regarding defendant City's tacit condonement and failure to supervise, discipline or provide remedial training when officers engage in excessive force, the Civilian Complaint Review Board is a City agency, allegedly independent of the NYPD that is responsible for investigating and issuing findings on complaints of police abuse and misconduct.3 When it does, however, Police Commissioner controls whether the NYPD pursues the matter and he alone has the authority to impose discipline on the subject officer(s). Since 2005, during former Police Commissioner Kelly's tenure, only one-quarter of officers whom the CCRB found engaged in misconduct received punishment more severe than verbal "instructions." Moreover, the number of CCRB-substantiated cases that the NYPD has simply dropped (i.e., closed without action or discipline) has spiked from less than 4% each year between 2002 and 2006, to 35% in 2007, and approximately 30% in 2008. Alarmingly, the NYPD has refused to prosecute 40% of the cases sent to it by the CCRB in 2009.4 As a result, the percentage of cases where the CCRB found misconduct but where the subject officers

---

1 Mollen Commission Report, pp. 2-3, *available at* http://www.parc.info/client_files/Special%20Reports/ 4%20-%20Mollen%20Commission%20-%20NYPD.pdf.

2 Oren Yaniv and John Marzulli, *Kelly Shrugs Off Judge Who Slammed Cops,* New York Daily News, December 2, 2009, *available at* http://www.nydailynews.com/news/ny_crime/2009/12/02/2009-12-02_kelly_shrugs_off_judge_who_rips_lying_cops.html.

3 In 2006, out of more than 10,000 allegations that were fully investigated, the CCRB substantiated only 594 (about 6%). In 2007, out of more than 11,000 allegations that were fully investigated, the CCRB substantiated only 507 (about 5%). *See,* CCRB Jan.-Dec. 2007 Status Report at p. 19, *available at* http://www.nyc.gov/html/ccrb/pdf/ccrbanb2007 _A.pdf. Upon information and belief, the low rate of substantiated complaints is due in part to the above-noted *defacto* policy and/or well-settled and widespread custom and practice in the NYPD whereby officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony and statements given to the CCRB, to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates.

4 Christine Hauser, *Few Results for Reports of Police Misconduct,* New York Times, October 5, 2009, at A 19.

were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007. Substantiated complaints of excessive force against civilians accounted for more than 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of cases dropped in 2008.5

128.    The existence of the aforesaid unconstitutional customs and practices, **specifically with regard to the practice or custom of discouraging police officers from reporting the corrupt or unlawful practices of other police officers and of retaliating against officers who report misconduct,** are further evidenced, *inter alia,* by the following:

    a.  Former New York County District Attorney Robert Morgenthau has been quoted as acknowledging that, in the NYPD, there is a "code of silence," or a "code of protection" that exists among officers and that is followed carefully;

    b.  In 1985, former NYPD Commissioner Benjamin Ward, testifying before a State Senate Committee, acknowledged the existence of the "code of silence" in the NYPD;

    c.  Former NYPD Commissioner Robert Daly wrote in 1991 that the "blue wall of solidarity with its macho mores and prejudices, its cover-ups and silence, is reinforced every day in every way."

129.    The existence of the described unlawful *de facto* policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and the City, including, without limitation, Police Commissioner.

130.    The actions of the officer-defendants resulted from and were taken pursuant to the above- mentioned *de facto* policies and/or well-settled and widespread customs and practices of the City, which are implemented by members of the NYPD, of engaging in systematic and ubiquitous perjury, both oral and written, to cover up federal law violations committed against civilians by either themselves of their fellow officers, supervisors and/or subordinates. They do so with the knowledge and approval of their supervisors, commanders and Police Commissioner who

---

5 Daily News, *Editorial: City Leaders Must Get Serious About Policing the Police,* August 20, 2008.

all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, *inter alia,* in sworn testimony, official reports, in statements to the CCRB and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence blatantly exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves of fellow offices, supervisors and/or subordinates against those civilians.

131.    The policies, practices, customs, and usages, and the failure to properly train, screen, supervise, or discipline, were a direct and proximate cause of the unconstitutional conduct alleged herein, causing injury and damage in violation of plaintiff s constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

132.    The City and NYPD knew or should have known that the acts alleged herein would deprive the plaintiff of his rights, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

133.    The City and NYPD are directly liable and responsible for the acts of the individual defendants because they repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them, and because it repeatedly and knowingly failed to enforce the rules and regulations of the City and NYPD, and to require compliance with the Constitution and laws of the United States.

134.    Despite knowledge of such unlawful *de facto* policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the City, including Police Commissioner, have not taken steps to terminate these policies, practices and/or customs,

do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

135. The aforementioned City policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the misconduct detailed herein.

136. Specifically, pursuant to the aforementioned City policies, practices and/or customs, the individual defendants felt empowered to exercise unreasonable and wholly unprovoked force against plaintiff. Pursuant to the aforementioned City policies, practices and/or customs, defendants failed to intervene in or report other defendants' violation of plaintiff's rights or subsequent perjury.

137. Plaintiff's injuries were a direct and proximate result of the defendants, City and the NYPD's wrongful *de facto* policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendants to properly supervise, train and discipline their officers.

138. The actions of the individual police defendants resulted from and were taken pursuant to *de facto* policies and/or well-settled and widespread customs and practices of The City, which were implemented by agents or employees of the NYPD, of employing wholly unprovoked and excessive force.

139. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate officers and were directly responsible for the violation of the plaintiff's constitutional rights.

140. Plaintiff's injuries were a direct and proximate result of defendants The City's and the NYPD's well-settled and widespread custom and practice at issue in this litigation.

141. As a result of the foregoing, plaintiff was deprived of liberty, suffered emotional distress, humiliation, costs and expenses, and was otherwise damaged and injured.

### FIFTH CAUSE OF ACTION
MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. § 1983

142. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

143. Defendants abused the legal process to use excessive force upon Mr. Carty after he was already restrained.

144. Defendants used excessive force upon Mr. Carty in order to obtain a collateral objective outside the legitimate ends of the legal process.

145. Defendants acted with intent to do harm to Mr. Carty without excuse or justification.

146. That solely as a result of the negligence, recklessness and/or intentional acts of defendants as aforesaid, Mr. Carty suffered great humiliation, degradation, emotional injuries; loss of freedom; deprivation of his state and federal constitutional rights; serious, severe and permanent personal injuries and disabilities; pain and suffering and loss of enjoyment of life; economic harm; was rendered sick, sore, lame and disabled; sustained severe mental anguish, nervous shock and great physical pain and has been damaged accordingly in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

## SIXTH CAUSE OF ACTION
DELAY AND DENIAL OF MEDICAL TREATMENT AND FAILURE
TO PROTCT WHILE IN CUSTODY
VIOLATION OF CIVIL RIGHTS AFFORDED BY
42 U.S.C. § 1983, § 1985, AND § 1988

147.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs

as if fully set forth herein.

148.    By their conduct and under color of law, defendants deprived Mr. Carty of his

constitutional rights to immediate medical treatment and failed to protect him once he became a

prisoner, thus perpetuating and exacerbating his physical and mental pain and suffering.

149.    As a result of the foregoing, plaintiff suffered injuries including but not limited to

severe and permanent personal physical injuries, loss of freedom, loss of enjoyment of life, had his

civil rights violated, severe and permanent emotional injuries, severe and permanent psychological

injuries, anguish, distress, humiliation, embarrassment, shame, lost earnings, medical expenses and

legal expenses and claims damages for the aforesaid injuries and accordingly has been damaged in

an amount exceeding the jurisdictional limits of all lower courts which would otherwise have

jurisdiction.

## SEVENTH CAUSE OF ACTION
UNREASONABLE AND EXCESSIVE FORCE
VIOLATION OF CIVIL RIGHTS AFFORDED BY
42 U.S.C. § 1983 AND § 1988

150.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs

as if fully set forth herein.

151.    By their conduct, defendants under color of law deprived plaintiff of his constitutional

rights to be free from excessive and unreasonable force.

152.    Plaintiff claims compensatory and punitive damages for the injuries set forth above and accordingly has been damaged in an amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## EIGHTH CAUSE OF ACTION
### ASSAULT AND BATTERY

153.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

154.    By reason of defendants' aforesaid acts, specifically in the course of their arrest of the plaintiff, defendants committed the torts of assault and battery upon him.

155.    That at all relevant times herein, defendants, their agents, servants and/or employees were under a duty to protect plaintiff from the violation of his civil rights, menacing, assault, battery, excessive force, brutality, and/or other intentional acts, negligence, recklessness and/or want of care in his unlawful detention and/or arrest by the NYPD police officers committing said acts.

156.    That at all relevant times herein, defendants, their agents, servants and/or employees menaced, assaulted, battered, and used excessive force, maliciousness and brutality in the arrest, detention and custody of plaintiff.

157.    That at all relevant times herein, defendants, their agents, servants and/or employees caused plaintiff to reasonably apprehend that he was about to be harmfully and offensively contacted in his arrest and detention.

158.    That at all relevant times herein, defendants, their agents, servants and/or employees offensively contacted and harmed plaintiff during his arrest and detention.

159.    That at all relevant times herein, defendants, their agents, servants and/or employees acted in an unsafe and unreasonable manner in the arrest, detention and custody of plaintiff under the circumstances and conditions then and there existing.

160. That at all relevant times herein, defendants, their agents, servants and/or employees were negligent, reckless and intentional in their failure to protect plaintiff from the violation of his civil rights, menacing, assault, battery, excessive force and brutality in his arrest and/or detention.

161. That solely as a result of the negligence, recklessness and/or intentional acts of defendants as aforesaid, plaintiff suffered injuries including but not limited to severe and permanent personal physical injuries, loss of freedom, loss of enjoyment of life, had his civil rights violated, deprivation of his state and federal constitutional rights, severe and permanent emotional injuries, severe and permanent psychological injuries, anguish, distress, humiliation, embarrassment, shame, degradation, economic harm, was rendered sick, sore, lame and disabled, sustained severe mental anguish, nervous shock and great physical pain, lost earnings, medical expenses and legal expenses and claims damages for the aforesaid injuries and accordingly has been damaged in an amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

### NINTH CAUSE OF ACTION
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

162. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

163. By the defendants' foregoing acts, specifically their assault and battery upon Mr. Carty, defendants intended to and did cause the foregoing harm to plaintiff.

164. That at all times relevant herein, defendants, their agents, servants and/or employees acted intentionally and/or with a reckless disregard for the likelihood of causing emotional distress to plaintiff in assaulting and battering Mr. Carty, including all acts further thereto as set forth above.

165. That at all times relevant herein, defendants, their agents, servants and/or employees acted intentionally and/or with a reckless disregard for the likelihood of causing emotional distress to plaintiff in being abusive, intimidating and threatening to him.

166.    That at all times relevant herein, defendants, their agents, servants and/or employees acted heinously and beyond the standards of civilized decency.

167.    That at all times relevant herein, the conduct of defendants, their agents, servants and/or employees was utterly intolerable in a civilized society.

168.    That at all times relevant herein, defendants, their agents, servants and/or employees committed these acts in public.

169.    That solely as a result of the negligence, recklessness and/or intentional acts of defendants as aforesaid, Mr. Carty suffered great humiliation, degradation, emotional injuries; loss of freedom; deprivation of his state and federal constitutional rights; serious, severe and permanent personal physical injuries and disabilities; pain and suffering and loss of enjoyment of life; economic harm; was rendered sick, sore, lame and disabled; sustained severe mental anguish, nervous shock and great physical pain and has been damaged accordingly in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

## TENTH CAUSE OF ACTION
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

170.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

171.    That at all times relevant herein, defendants, their agents, servants and/or employees were under an affirmative duty to refrain from abusing their power and position, including all acts further thereto as set forth above.

172.    That at all times relevant herein, defendants, their agents, servants and/or employees knew or reasonably should have known that the assault and battery could lead to plaintiff's harm.

173. That at all times relevant herein, plaintiff justifiably relied upon defendants, their agents, servants and/or employees to conduct themselves properly as public officials and not to abuse their power and position in the manner as set forth above.

174. That at all times relevant herein, defendants, their agents, servants and/or employees breached their duty to plaintiff by abusing their power and position as set forth above.

175. That at all times relevant herein, defendants, their agents, servants and/or employees were under an affirmative duty to treat plaintiff with courtesy, professionalism and respect.

176. That at all times relevant herein, defendants, their agents, servants and/or employees knew or reasonably should have known that failing and/or refusing to treat plaintiff with courtesy, professionalism and respect could lead to his harm under the circumstances then and there existing.

177. That at all times relevant herein, plaintiff justifiably relied upon defendants, their agents, servants and/or employees to treat him with courtesy, professionalism and respect.

178. That at all times relevant herein, defendants, their agents, servants and/or employees breached their duty to plaintiff in being verbally abusive, intimidating and threatening to him.

179. That solely as a result of the negligence of defendants as aforesaid, Mr. Carty suffered injuries including but not limited to severe and permanent emotional injuries, severe and permanent psychological injuries, anguish, distress, humiliation, embarrassment, shame, severe and permanent personal physical injuries, loss of enjoyment of life, had his civil rights violated, lost earnings, medical expenses and legal expenses and claims damages for the aforesaid injuries and accordingly has been damaged in an amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

### ELEVENTH CAUSE OF ACTION
NEGLIGENT HIRING AND RETENTION

180. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

181. Upon information and belief, defendants failed to use reasonable care in the hiring and retention of the aforesaid defendants who conducted and participated in the arrest of Mr. Carty.

182. Defendants knew, or should have known in the exercise of reasonable care, the propensities of the individual defendants to engage in the wrongful conduct heretofore alleged in this Complaint.

183. That solely as a result of the negligence, recklessness and/or intentional acts of defendants as aforesaid, Mr. Carty suffered great humiliation, degradation, emotional injuries; loss of freedom; deprivation of his state and federal constitutional rights; serious, severe and permanent personal injuries; pain and suffering and loss of enjoyment of life; economic harm; was rendered sick, sore, lame and disabled; sustained severe mental anguish, nervous shock and great physical pain and has been damaged accordingly in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

### TWELFTH CAUSE OF ACTION
NEGLIGENT TRAINING AND SUPERVISION

184. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

185. Upon information and belief, defendants failed to use reasonable care in the training and supervision of the aforesaid defendants who conducted and participated in the arrest of Mr. Carty.

186. That solely as a result of the negligence, recklessness and/or intentional acts of defendants as aforesaid, Mr. Carty suffered great humiliation, degradation, emotional injuries; loss of freedom; deprivation of his state and federal constitutional rights; serious, severe and permanent personal injuries; pain and suffering and loss of enjoyment of life; economic harm; was rendered sick, sore, lame and disabled; sustained severe mental anguish, nervous shock and great physical pain and has been damaged accordingly in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

## THIRTEENTH CAUSE OF ACTION
### NEGLIGENCE

187. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

188. That defendants were negligent in the use of excessive force against Mr. Carty; in failing to use such care in the performance of police duties as a reasonably prudent and careful police officer would have used under similar circumstances without any negligence on the part of Mr. Carty contributing thereto; and defendants were negligent in hiring and retaining persons who were unfit to serve as police officers and who they knew or should have known had dangerous propensities and lack of proper temperament, in that defendants failed to exercise reasonable precautions in employing the aforesaid police officers and failing to properly investigate their background and that these police officers were otherwise unfit to serve as police officers for defendants; and defendants were negligent in its instructions of its police officers by not exercising care in instructing them as to their deportment, behavior and conduct as police officers and representatives of defendants and in training and instructions, among other things of the proper conduct of police officers in making an arrest and what they should do following an arrest of an individual.

189.    That defendants are liable for the conduct of their agents, servants and/or employees by virtue of *respondeat superior*.

190.    As a result of the foregoing, plaintiff suffered injuries including but not limited to severe and permanent personal injuries, loss of freedom, loss of enjoyment of life, had his civil rights violated, severe and permanent emotional injuries, severe and permanent psychological injuries, anguish, distress, humiliation, embarrassment, shame, and legal expenses and claims damages for the aforesaid injuries and accordingly has been damaged in an amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## PRAYERS FOR RELIEF

WHEREFORE, plaintiff, ANTHONY CARTY, demands judgment against the defendants jointly and severally and prays for relief as follows:

a.      That he be compensated for violation of his constitutional rights, pain, suffering, mental anguish, and humiliation; and

b.      That he be awarded punitive damages against the individual defendants; and

c.      That he be compensated for attorneys' fees and the costs and disbursements of this action; and

d.      For such other further and different relief as to the Court may seem just and proper.

Dated: Brooklyn, New York
      January 26, 2016

By: _____
    ROBERT J. DI GIANNI, JR., ESQ.
    Attorney for Plaintiff
    159 20th Street, Suite 1B-20
    Brooklyn, New York 11232
    (718) 245-6980

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ANTHONY CARTY,

Plaintiff,

-against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, P.O.
RONALD CAPURSI (Shield Number 7276), P.O. PATRICK F. O'NEILL, (Shield Number
5581), P.O. SEAN DAWSON (Shield Number 1415), and P.O. JANINE SARTINI (Shield
Number 20542),

Defendants.

---

## AMENDED COMPLAINT

---

**ROBERT J. DI GIANNI JR.**
Attorney for Plaintiff
159 20th Street, Suite 1B-20
Brooklyn, New York 11232
Telephone: 718-245-6980
Fax: 888-431-9136
rjd@digiannilaw.com